1

2

3                    UNITED STATES DISTRICT COURT

4                    EASTERN DISTRICT OF CALIFORNIA

5

6   STACEY BROWN,                         1:06-CV-00121-OWW-TAG

7                    Plaintiff,

8        v.                               MEMORANDUM DECISION AND ORDER
                                          RE GRANTING IN PART AND
9   COUNTY OF KERN, KERN COUNTY           DENYING IN PART DEFENDANTS'
    SHERIFF'S DEPARTMENT; KERN            MOTION FOR SUMMARY JUDGMENT
10  COUNTY SHERIFF MACK WIMBISH,          (DOC. 25)
    KERN COUNTY SHERIFF'S DEPUTY
11  PRATT (#200536), KERN COUNTY
    SHERIFF'S DEPUTY HAISLIP, AND
12  DOES 1 THROUGH 10, inclusive,
    sued in both their individual
13  and official capacities,

14                   Defendants.

15

16               1.    INTRODUCTION

17       Defendants Kern County ("County"), Kern County Sheriff's

18  Department ("Sheriff's Dept."), Kern County Sheriff Mack Wimbish

19  ("Wimbish"), Kern County Sheriff Deputy Sean Pratt ("Pratt") and

20  Kern County Sheriff Deputy Royce Haslip ("Haslip") move for

21  summary judgment pursuant to Federal Rules of Civil Procedure 56

22  to adjudicate Plaintiff Stacey Brown's ("Brown") three causes of

23  action under: § 1983 (first claim), § 7 and § 13 of the

24  California Constitution (second claim) and California Civil Code

25  § 52.1 (third claim).  Oral argument on this matter was heard on

26  February 4, 2008.

27               2.    PROCEDURAL BACKGROUND

28       Plaintiff filed his complaint on February 2, 2006. (Doc. 1,

                                 1

Complaint)  Defendants filed their motion for summary judgment on
December 14, 2007, including their Statement of Undisputed Facts.
(Doc. 25, Motion for Summary Judgment and Doc. 26, DSUF)
Plaintiff filed his opposition to Defendants' Motion for Summary
Judgment on January 14, 2008, including his Statement of
Undisputed Facts. (Doc. 32, Opposition and PSUF)  Defendants
filed their reply to Plaintiff's Opposition on January 18, 2008.
(Doc. 35, Reply)

### 3.    **FACTUAL HISTORY**

### A. UNDISPUTED FACTS

At about 3:30 a.m. on February 25, 2005, Plaintiff Stacey
Brown was in the process of committing a burglary when he was
interrupted by Kern County Sheriff Deputies. (DSUF 1, 2)  When
the Deputies arrived at the scene of the burglary, Plaintiff fled
to avoid being arrested. (DSUF 3)  Plaintiff managed to evade the
Deputies by hiding in a field of tall grass. (DSUF 4)  Plaintiff
was tracked by a K-9 unit, Nando, the police dog and his handler,
Defendant Pratt. (DSUF 5, 8)  Defendant Haislip followed the K-9
unit. (DSUF 8)  Eventually, Nando, the police dog, located
Plaintiff. (DSUF 6)  Defendant Pratt deployed Nando who in
response seized Plaintiff. (DSUF 7)  Plaintiff was arrested and
convicted of felony second degree burglary, a non-violent
property crime while having a prior conviction for burglary.
(DSUF 1, PSUF 1)

At some point in the altercation between Plaintiff, Nando,
and Defendant Pratt, Defendant Haislip was standing by the side
of Defendant Pratt. (PSUF 7)  During Plaintiff's apprehension and
arrest, Defendant Haislip did not exert any force on Plaintiff,

did not strike him or injure him in any way and did not direct
Nando, the police dog. (DSUF 9, 11)   During the events described,
Defendant Kern County Sheriff Wimbish was not present and did not
use force on Plaintiff. (DSUF 12-13)

Kern County Sheriff Department's use of force policy
prohibits excessive force. (DSUF 16)   Kern County does not have a
custom of condoning the use of excessive force. (DSUF 18)   Kern
County Sheriff Department trains its deputies that if excessive
force is used, they will be subject to discipline and criminal
prosecution. (DSUF 19)   Kern County Sheriff Department has
policies that govern the appropriate use of police dogs. (DSUF
20)

**B. DISPUTED FACTS**

Plaintiff alleges that Deputies involved in Plaintiff's
arrest report no facts indicating that there was probable cause
to believe Plaintiff was armed or physically dangerous. (PSUF 2)
Plaintiff alleges Deputies do not report at any time that
Plaintiff had threatened them or anyone else with physical
injury. (PSUF 3)

Plaintiff claims he was not warned by any Deputy that he
would be attacked and bitten by a police dog. (PSUF 9)   Plaintiff
contends Defendant Pratt permitted Nando, the police dog to
repeatedly attack and bite Plaintiff, including allowing Nando to
bite Plaintiff in the genitals which ripped the skin of
Plaintiff's penis. (PSUF 4)   Plaintiff grabbed and pushed Nando,
the police dog away to stop it from biting him, including in his
groin area.   Plaintiff asked the Deputy Officers to call the
police dog off but they refused.   Plaintiff alleges that

**3**

1   Defendant Pratt struck Plaintiff with his baton five or six times

2   and refused to call Nando off Plaintiff when it was attacking

3   him.  Plaintiff alleges Defendant Pratt demanded that Plaintiff

4   "stop fighting [the dog], stop resisting, and place his hands on

5   his head."  When Plaintiff did not do so, Defendant Pratt

6   repeatedly used his baton to strike Plaintiff, breaking his arm.

7   (PSUF 5, 8)  Plaintiff alleges that these actions are

8   unreasonable police practice. (PSUF 6)

9        Plaintiff contends that Defendant Haislip was standing by

10  Defendant Pratt's side during the time Nando, the police dog, was

11  attacking Plaintiff and at the time Defendant Pratt was striking

12  Plaintiff with the baton and Defendant Haislip took no action to

13  stop the dog's attack or stop Defendant Pratt from using his

14  baton. (PSUF 7)  Defendant Haislip alleges he did not supervise

15  Defendant Pratt. (DSUF 10)

16                  **4.   STANDARD OF REVIEW**

17  **A.   SUMMARY JUDGMENT**

18       Summary judgment is warranted only "if the pleadings,

19  depositions, answers to interrogatories, and admissions on file,

20  together with the affidavits, if any, show that there is no

21  genuine issue as to any material fact." Fed. R. Civ. P. 56(c);

22  *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

23  Therefore, to defeat a motion for summary judgment, the non-

24  moving party must show (1) that a genuine factual issue exists

25  and (2) that this factual issue is material. *Id*.  A genuine issue

26  of fact exists when the non-moving party produces evidence on

27  which a reasonable trier of fact could find in its favor viewing

28  the record as a whole in light of the evidentiary burden the law

**4**

places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995). Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial. *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996). //

**5**

**5.   FEDERAL CLAIMS**

**A.   § 1983 CLAIMS: MUNICIPAL DEPARTMENTS AND OFFICIAL CAPACITY SUITS**

**I. OFFICIAL CAPACITY**

Plaintiff brings suit under § 1983 for violation of his civil rights to be free from excessive force under the Fourth Amendment against all Defendants, including against Defendant Sheriff Wimbish, Defendant Deputy Pratt and Defendant Deputy Haislip in their official capacities.

When state officials are sued in their official-capacities, the suit is treated as against the state. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). "1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 fn. 8 (9th Cir. 2002). In such suits, the real party in interest is the entity for which the official works. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). By contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [taken] under color of state law." *Graham,* 473 U.S. at 165.

A suit against Defendants Wimbish, Pratt and Haislip, Kern County Sheriff Deputies, in their official capacities is the same as a suit against the payor of any damages that may be awarded, therefore the proper defendant is Kern County.

Plaintiff's § 1983 claim against Defendants Wimbish, Pratt and Haislip in their official capacities is **DISMISSED** from the suit **WITH PREJUDICE.**

**6**

**II. MUNICIPAL DEPARTMENTS**

Plaintiff brings suit not only against Kern County but its municipal department, the Kern County Sheriff's Department. Defendants bring their Motion for Summary Judgment challenging Plaintiff's § 1983 claim against Defendant Kern County Sheriff's Department.  Municipal departments, here Kern County Sheriff's Department, are not appropriate Defendants.  Under Section 1983, a "person" acting under color of law may be sued for violations of the U.S. Constitution or federal laws.  The term "persons" under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities. *Vance v. County of Santa Clara*, 928 F.Supp. 993, 995-996 (N.D.Cal. 1996); *see also Stump v. Gates*, 777 F.Supp. 808, 816 (D.Colo. 1991) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.")  But "persons" do not include municipal departments. *Id.*  Kern County is the proper defendant in a § 1983 suit, not Kern County Sheriff's Department.

Defendants motion for summary judgment regarding Kern County Sheriff's Department as not being a proper defendant under Plaintiff's first cause of action for § 1983 claims is **GRANTED.**

**B.   FOURTH AMENDMENT EXCESSIVE FORCE/FAILURE TO INTERVENE CLAIM AGAINST DEFENDANT HAISLIP**

Plaintiff alleges in his § 1983 first cause of action that he was deprived of his constitutional right to be free from

excessive force under the Fourth Amendment.[1]  Defendants bring
their Motion for Summary Judgment on behalf of Defendant
Haislip.[2]  Defendants contend that Plaintiff never alleged any
facts that Defendant Haislip used any force on Plaintiff.  Also
Plaintiff never alleged a "failure to intervene" claim in his
Complaint.  Defendants also contend that Defendant Haislip was
only present at the very end of the altercation and the arrest
occurred very quickly therefore there was no opportunity to
intercede.  Defendants argue that even if evidence is proffered
that Haislip used force, he is nonetheless entitled to judgment
based upon qualified immunity.

Plaintiff claims in his first cause of action the following:

First Cause of Action – 42 U.S.C. § 1983
(Against all Defendants)

9. In the early morning hours of February 25, 2005,
west of Highway 99, south of Olive and east of Knudsen,
near Bakersfield, California, defendants Pratt and
Haislip and DOES arrested plaintiff. During the course
of the arrest, defendants used excessive force against
plaintiff. The excessive force including [sic] allowing
or ordering a KSD police dog to attack and bite
plaintiff, and one or more deputies hitting and/or
striking plaintiff, causing plaintiff to suffer serious
and life threatening injuries.

11. Defendants' conduct as alleged violated plaintiff's
rights as secured by the Fourth And Fourteenth
Amendments to the United States Constitution, thereby
entitling plaintiff to sue for damages under 42 U.S.C.
§ 1983.

(Doc. 1, Complaint, ¶¶ 9, 11)

---

[1] Plaintiff's first cause of action also states an excessive
force claim under the Fourteenth Amendment.

[2] Defendants are not challenging in their Motion for Summary
Judgment Plaintiff's § 1983 Fourth Amendment excessive force
claim against Defendant Pratt, the Deputy that actually exerted
force, and the handler of the K-9 dog that bit Plaintiff.

**8**

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003)(quoting 42 U.S.C. § 1983). "The rights guaranteed by section 1983 are 'liberally and beneficently construed.'" *Id.* (quoting *Dennis v. Higgins*, 498 U.S. 439, 443 (1991). Pursuant to 42 U.S.C. § 1983, Plaintiff may bring a civil action for deprivation of rights under the following circumstances:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To establish personal liability in a § 1983 action, it is enough to show that the official, "acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (internal quotations omitted). Public officials sued in their personal capacity may assert personal liability defenses, such as qualified immunity. *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999).

//

**9**

## I. EXCESSIVE FORCE

"Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. Determining whether force used in making an arrest is excessive or reasonable 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "[T]he fundamental premise that the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).

## II. FAILURE TO INTERVENE

Plaintiff does not allege in his first cause of action a claim for "failure to intervene" to prevent excessive force, however, that is the only plausible cause of action to be asserted against Defendant Haislip based upon the evidence proffered by Plaintiff to Defendants Motion for Summary Judgment. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996).

However, assuming a failure to intervene claim is alleged, such a claim has certain limitations. "Importantly, however, officers can be held liable for failing to intercede only if they

**10**

had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d

1271, 1289 (9th Cir. 2000); *see also Bruner v. Dunaway*, 684 F.2d

422, 426-27 (6th Cir. 1982) (officers not present at during time

of alleged assault not liable); *Gaudreault v. Municipality of*

*Salem*, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) (motion for summary

judgment granted as officers had no "realistic opportunity" to

prevent an attack committed by another officer).

    Plaintiff cites as evidence for an alleged "failure to

intervene" claim, Defendant Pratt's police report that states

Defendant Haislip was standing "side-by-side with Defendant

Pratt, the dog handler when Defendant Pratt's K-9 partner

attacked Plaintiff." (Doc. 32, Cook's Decl., Exhibit A, Pratt

Report)  Plaintiff also testified in his deposition that at the

time Nando, the police dog, was biting his groin region, both

Defendant Pratt and Defendant Haislip were present. (*Id.*, Cook's

Decl., Exhibit F, Brown Depo., 34:4-21)

> Q: Before you grabbed onto the dog or, actually, before
> he bit you on the penis, had anybody -- any deputy or
> policeman  -- arrived at your location?
> A: They was there.  At the time the dog was biting me
> on my penis, they were there.
> Q: Do you remember when they first got there?
> A: No.
> Q: Do you remember how many deputies or police officers
> were there when you first became aware that they were
> there?
> A: It was two of them.
> Q: Do you remember how far they were from you when you
> first became aware of them?
> A: They was probably about a "feet."
> Q: About a foot?
> A: Yes, about a foot.
> Q: Do you remember where they were located in relation
> to the top of your head?
> A: It was at the bottom of my feet.
>                   --
> Q: They both where. Okay. Were they standing shoulder-
> to-shoulder facing you so some other position?
> A: They were standing side-by-side.

Q: Where they standing facing your head or standing on the side of your body?
A: Standing facing my head.

*Id.*, p. 33:22-34:15, 34:18-24.

Plaintiff's entire opposition to Defendants Motion for Summary on behalf of Defendant Haislip states the following:

Defendant Haislip was standing "side-by-side" with the dog handler Pratt when Pratt's dog attacked Mr. Brown. Pratt's report, page 3 (Exhibit A to Cook decl.); 8/7/07 Brown depo., 34:4-21 (page 67 of Exhibit F to Cook decl.). Haislip was thus present when Pratt (1) allowed his dog to continue to bite Mr. Brown and (2) struck Mr. Brown with a baton to prevent Mr. Brown from stopping the dog's attack. 8/7/07 Brown depo.,30:10-36:19 (Exhibit F to Cook decl.). Additionally, no one warned Mr. Brown that he would be attacked and bitten by the dog. Brown depo., 30:18-20 (page 63 of Exhibit F to Cook decl.).

(Doc. 32, Opposition, p. 2:11-18)

In response to Plaintiff's evidence, Defendants contend that Defendant Haislip was present only at the very end of Brown's struggle with the police dog and Defendant Haislip in his declaration, (provided for Summary Judgment), states that Brown's arrest occurred very quickly after the police dog was deployed. (Doc. 26-2, Haislip Decl., ¶ 7) Defendants also assert that Plaintiff in his deposition testimony cannot even state when Defendants arrived on the scene. However, Plaintiff testified in his deposition that two deputies were standing at some point during his attack by the K-9 dog and subsequent beating. If Plaintiff's statements are believed that he was not struggling, was not resisting, was not armed, and was struck a number of times by Pratt's baton during the attack on Plaintiff by the police dog, Nando, a trier of fact could find excessive force which Defendant Haislip would have been obligated to prevent. At

**12**

1   some point in the altercation, by the time the alleged beating

2   occurred and Defendant Haislip was present, a possible inference

3   can be drawn that while Plaintiff was being hit, both deputies

4   were present.  The Court must view the evidence and draw

5   inferences in light most favorable to the nonmoving party.  And

6   while a court's role on summary judgment is not to weigh evidence

7   or resolve issues, it still must find sufficient evidence for a

8   triable issue of fact to survive a summary judgment motion. *See*

9   *Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

10       In applying the summary judgment standard, Plaintiff's

11  evidence does not support a failure to intervene claim that

12  Haislip should have prevented Defendant Pratt's K-9 from

13  attacking Plaintiff.  K-9s only answer to their handlers.

14  Defendant Haislip is not alleged to be Nando's handler and

15  therefore could not have directed Nando to cease his attack on

16  Plaintiff.  Plaintiff provides no contrary evidence.  There is

17  however, a triable issue of material fact on whether Defendant

18  Haislip had the ability to intervene to prevent the alleged

19  attack by Defendant Pratt on Plaintiff.  Plaintiff Brown has

20  provided evidence through his deposition testimony and Pratt's

21  Police Report that Defendant Haislip was possibly at the scene of

22  the incident in time to prevent the attack when Plaintiff was

23  being bitten by the K-9 dog, Nando, and when Defendant Pratt was

24  hitting Plaintiff with his baton during the dog attack.

25       Defendants motion for summary judgment on behalf of

26  Defendant Haislip regarding the first cause of action, § 1983

27  failure to intervene to prevent the use of excessive force is

28  **DENIED**.  The motion is **GRANTED** as to Defendant Haislip's

**13**

opportunity to intercede to prohibit Defendant Pratt's K-9 dog from attacking Plaintiff.

### III. SUMMARY JUDGMENT IN A QUALIFIED IMMUNITY CASE: EXCESSIVE FORCE

Defendants also assert the defense of qualified immunity on behalf of Defendant Haslip in response to Plaintiff's Fourth Amendment excessive force claim.  Deciding qualified immunity entails a two-step analysis.  First, a court must ask whether a constitutional violation occurred at all.  If the answer to this question is yes, the court must then inquire whether the right violated was "clearly established" by asking whether a reasonable officer could believe that the defendant's actions were lawful. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The traditional summary judgment approach should be used in analyzing the first step of the *Saucier* analysis:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Where the facts are disputed, their resolution and determinations of credibility are manifestly the province of a jury.

*Wall v. County of Orange*, 364 F.3d 1107, 1110-1111 (9th Cir. 2004) (internal citations and quotations omitted).  In the second step, the court must ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.  Although this inquiry is primarily a legal one, where the reasonableness of the officer's belief that his conduct was lawful "depends on the resolution of disputed issues of fact...summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th. Cir. 2003) (citing *Saucier*, 533

**14**

1  U.S. at 216 (Ginsburg J., concurring)).

2       The qualified immunity analysis begins with whether the law
3  is "clearly established" such that a reasonable official could
4  believe that his or her actions were lawful. *See Katz*, 533 U.S.
5  at 194-195.  The inquiry is more particularized and thus more
6  relevant than the general proposition that excessive use of force
7  by an officer is contrary to the Fourth Amendment (under
8  objective standards of reasonableness).  "Reasonable mistakes can
9  be made as to the legal constraints on particular police conduct"
10 *Id.* at 195.

11      At the time of the alleged incident on February 25, 2005, it
12 was clearly established law that the use of excessive force is a
13 violation of the Fourth Amendment, *Id.* at 202 ("if it is
14 excessive of reasonableness"), and it was clearly established
15 that an officer's failure to intervene to prevent excessive force
16 violates a suspect's Fourth Amendment rights.  While these rights
17 are clearly established, the precise contours of Defendant
18 Haislip's duties under the developing facts cannot be decided
19 without additional evidence to determine if qualified immunity
20 applies.

21      Qualified immunity cannot be established as a matter of law
22 on the allegations of Plaintiff's first cause of action against
23 Defendant Haislip.  Defendants' motion for summary judgment on
24 this basis is **DENIED.**

25 **C.   § 1983 FOURTH AMENDMENT SUPERVISOR LIABILITY AGAINST
       DEFENDANT WIMBISH, PERSONAL LIABILITY**
26
27      Defendants bring their Motion for Summary Judgment on
   Plaintiff's first cause of action for § 1983 Fourth Amendment
28

**15**

excessive force on behalf of Defendant Sheriff Wimbish. Defendant Wimbish is sued in his individual capacity. Defendants claim that there is no evidence that Wimbish committed any act in his individual capacity to be liable for a § 1983 supervisor liability claim under the Fourth Amendment for excessive force. Wimbish was not present at the scene of the alleged altercation and no evidence was provided that Defendant Wimbish had a policy concerning excessive force and the use of canine dogs that caused Plaintiff's constitutional violation.

A supervisor can be held liable for excessive force under the Fourth Amendment if he or she was personally involved in depriving a plaintiff of constitutional rights, or if there is sufficient causal connection between the wrongful conduct of the supervisor and the violation of the constitutional right. *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991) *cert. denied,* 502 U.S. 1074 (1992).  It is not alleged that Defendant Sheriff Wimbish was personally involved in the alleged application of excessive force.  Plaintiff does not claim he arrested or used excessive force on the day of the alleged incident.  Plaintiff has alleged however in his Complaint that Defendant Sheriff Wimbish is "responsible for implementing, maintaining, sanctioning, or condoning a policy, custom or practice under which the illegal or wrongful acts hereinafter complained of occurred.  By reason of this policy, practice or custom [Wimbish is] liable for damages hereinafter complained of." (Doc. 1, Complaint, ¶ 6)

It is well-established that supervisors, in their supervisory role, can be held liable under a § 1983 claim in

**16**

their individual capacity for their participation in the deprivation of a constitutional right if there is sufficient casual connection between the supervisor's wrongful conduct and constitutional violation. *See Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (chief of police can be held liable as supervisor for police officers' excessive force); *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998)(chief of police can be held liable in his individual capacity for participation in deprivation of Plaintiffs' right regarding the use of excessive force by officers); *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101 (E.D.Cal. 2005) (chief of police can be held liable in individual capacity under § 1983 for his participation in failing to train and discipline officers in regards to excessive force by police).

Liability of Sheriff Wimbish only arises when (1) Sheriff Wimbish's own "'culpable action or inaction in the training, supervision, or control of his subordinates' caused the constitutional injury"; for which Sheriff Wimbish "acquiesce[d] in the constitutional deprivations of which [the] complaint is made;" or that (2) Sheriff Wimbish's conduct showed a "reckless or callous indifference to the rights of others." *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101, 1116 (E.D.Cal. 2005) *(citing Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir. 1991)). To establish a causal connection between Sheriff Wimbish's action and the constitutional violation, Plaintiff must provide evidence that Sheriff Wimbish "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known,

**17**

would cause others to inflict the constitutional injury." *Larez*, 946 F.2d at 646.

"Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)(quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "This latter liability is not a form of vicarious liability. Rather, it is direct liability. Under direct liability, plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right. *Id.* at 1447; *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)("The requisite causal connection can be established ... by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.")

Plaintiff responds to Defendants Motion for Summary Judgment by arguing that because Kern County Sheriff Department's Canine Policy expressly permits the use of a dog in a burglary, it is liable.  Plaintiff cites Kern County Sheriff's Department Canine Policy that states that canine teams should be dispatched in situations including burglaries and alarms in progress. Plaintiff argues that Defendant Haislip's and Defendant Pratt's statements in their declaration and police report implicitly

**18**

admit force used against Plaintiff Brown was in accordance with their departmental policy.  Kern County Sheriff Department's Canine Policy, Directive A: Types of Calls Suitable for Canines states:

> Sheriff's canine teams should be primarily dispatched to the types of calls which best suit their abilities. These calls include, but are not limited to:
> ---
> •    Burglaries/alarms in progress;
> ---

(Doc. 26, DSUF, Exhibit E, Kern County Sheriff Department's Metropolitan Patrol Division Operational Manual, Sheriff's Canine Section Deployments, "Canine Policy")  Plaintiff also cites to Defendant Haislip's declaration, paragraphs 2 and 9 which states:

> 2.  Over my career and in the Law Enforcement Academy, I have been trained repeatedly in the use af force. I received the bulk of my training in this area before February 25, 2005. I have been trained that it is unlawful to use force that is unreasonable to the circumstances. I have been trained that reasonable force may be used to prevent a suspect from fleeing or to prevent an imminent attack on an officer. I have been trained that if I use excessive force, I will face employment discipline up to and including firing and that I could face criminal prosecution-I have been trained that if I see another deputy using excessive force that I cannot tolerate it and I must intercede to stop the use of force, to report the officer and to present evidence against the deputy who used excessive force.
>
> 9.  During Mr. Brown's apprehension, I did not see any officer use force that was excessive to the circumstances. If I had seen this occur, I would have intervened to stop it. I would have reported this to my supervisor and I would have documented this in a report.

(Doc. 26-2, Haislip Decl., ¶¶ 2, 9)  And Plaintiff refers the Court to Defendant Pratt's police report claiming that Defendant Pratt reports in detail the incident in which he deployed his dog to attack and bite Plaintiff to seize him in his flight from

arrest and thereafter Plaintiff was bit in the genitals when Plaintiff continued to struggle and strike Nando. Defendant Pratt also reported that he beat Plaintiff when Plaintiff tried to stop the dog's attack. (Doc. 32, PSUF, Exhibit A, Kern County Sheriff's Department, Pratt's Report)  Plaintiff argues that Defendant Pratt's and Defendant Haislip's statements were in accordance with department policy which expressly authorized the dog attack and the deputies' admissions.

Plaintiff however, provides no admissible evidence of Defendant Wimbish's role in a policy that caused Plaintiff's constitutional violation.  The dispute is over the factual performance of the officers in the discharge of their duties. There is no deposition testimony from Defendant Wimbish stating he adopted and implemented the policy that caused the alleged constitutional violation.  There is no testimony by Defendant Deputies Pratt and Haislip that Wimbish had any knowledge of this incident or that he reviewed and approved the officers' actions. There is no expert opinion that Kern County Sheriff Department's policies, as implemented by Defendant Wimbish, were a cause of Plaintiff's injuries by Defendant Deputies Pratt and Haislip.

Defendants motion for summary judgment on behalf of Defendant Sheriff Wimbish regarding Plaintiff's § 1983 excessive force claim is **GRANTED.**  There is no failure to intervene claim as to Wimbish.

**D. § 1983 *MONELL* LIABILITY**

Defendants also claim there is no *Monell* liability of Defendant Kern County on the basis of (1) the *Venegas v. County of Los Angeles*, 87 P.3d 1 (2004) decision and (2) the lack of

evidence that there was  a policy or custom by Defendant Kern

County that caused the alleged § 1983 excessive force in

violation of the Fourth Amendment.

**I.    § 1983 CLAIMS: SHERIFF ACTS ON BEHALF OF COUNTY**

Defendants assert in their Motion for Summary Judgment that

California Supreme Court case *Venegas v. County of Los Angeles*,

87 P.3d 1 (2004) controls whether County Sheriffs work for the

State or the County and seek summary adjudication for Kern County

on Plaintiff's § 1983 claims.  They argue that the County lacks

policymaking authority in this instance.  Defendants contend that

Sheriffs, when conducting law enforcement activities, act on

behalf of the State and are state policymakers entitling the

County to the protections of the Eleventh Amendment which

provides that the actions against state agents are barred except

in limited circumstances.

However, Plaintiff maintains the Ninth Circuit court case,

*Brewster v. County of Shasta*, 275 F.3d 803 (9th Cir. 2001)[3] "is

controlling on the issue of whether California sheriffs are

subject to section 1983 liability." *Brockmeier v. Solano County*

*Sheriff's Dept.*, No. CIV-S-05-2090 MCE EFB PS, 2006 WL 3760276,

at *9 (E.D.Cal. Dec. 18, 2006).[4]

---

[3] *See also* Ninth Circuit decision in *Bishop Paiute Tribe v.*
*County of Inyo*, 291 F.3d 549 (9th Cir. 2002), vacated on other
grounds and remanded in *Inyo County v. Paiute-Shoshone Indians of*
*the Bishop Cmty. of Bishop Colony*, 538 U.S. 701 (2003).

[4] This court has also followed the Ninth Circuit *Brewster*
decision in *Faulkner v. County of Kern*, NO. 1:04-CV-05964 OWW
TAG, 2006 WL 1795107 at * 15 (E.D.Cal. Jun 28, 2006) and *Garcia*
*v. City of Merced*, NO. 1:07CV00867 OWW DLB, 2008 WL 115201 at *18
(E.D.Cal. Jan 10, 2008).  However, other district courts in the
Ninth Circuit have held opposite. *see Walker v. County of Santa*

The California decision, *Venegas v. County of Los Angeles*, 87 P.3d 1 (2004) holds that a sheriff acts for the state in conducting investigations.  *Venegas* directly conflicts with the earlier Ninth Circuit decision, *Brewster v. County of Shasta*, 275 F.3d 803 (9th Cir. 2001), that holds California Sheriffs act on behalf of the county when investigating crimes.

The *Brewster* court did not have the benefit of the analysis in the later California *Venegas* case. "The *Venegas* court challenges the holding in *Brewster,* mistakenly asserting that the Ninth Circuit failed to follow the 'guidance given by [California state cases] *McMillian*, *Pitts and Peters*.'" *Brockmeier*, 2006 WL 3760276, at *8.  However, the *Brewster* court did apply and follow the U.S. Supreme Court's *McMillian* decision in great detail, conducting a thorough and expansive analysis, reviewing relevant statutory and constitutional provisions in deciding to address whether California sheriffs act on behalf the state or county when investigating crimes.  The court carefully analyzed and specifically rejected the *Pitts* and *Peters* decisions which were analyzed with different results by the *Venegas* court.  *See Brockmeier*, 2006 WL 3760275, at *8 (lengthy discussion and analysis of *Venegas and Brewster*); *see also Brewster*, 275 F.3d at 807-811.

The *Venegas* decision does not overturn Ninth Circuit precedent on this issue regarding a federal statute and does not

---

*Clara*, NO. C 04-02211 RMW 2005 WL 2437037, at *4 (N.D.Cal. Sep 30, 2005).

control on issues of federal law.[5]  The "ultimate issue is whether or not California sheriffs are subject to liability under 42 U.S.C. § 1983 when executing their law enforcement duties" and "[t]his is an ultimate question of federal law even though it requires application of some principles of state law to resolve it," *Brockmeier*, 2006 WL 3760275, at *6.  "[T]he question of municipal liability under section 1983 is one of federal law." *Streit v. County of Los Angeles*, 236 F.3d 552, 560 (9th Cir. 2001)("even if [*Peters*] were on all fours we would not be bound by its conclusions regarding section 1983 liability because such questions implicate federal, not state law".)  Until the Ninth Circuit addresses this issue and abrogates the *Brewster* decision, this Court is bound by Ninth Circuit precedent.[6]

---

[5] As this Court has stated earlier in *Faulkner v. County of Kern*, No. 1:04-CV-05964 OWW TAG, 2006 WL 1795107 at *16 (E.D.Cal. June 28, 2006), (a decision following *Brewster)* "[b]ecause the Ninth Circuit considers California sheriffs performing law enforcement functions to be county officers, the majority's contrary conclusion here creates a split that results in immunizing sheriffs from section 1983 liability in actions brought in state court while exposing them to liability in identical actions filed in federal court. This effectively drives California civil rights plaintiffs with actions against a county sheriff out of our court system and into federal court.  To ensure uniformity in the enforcement of federal civil rights law in both state and federal courts in California, the United States Supreme Court should decide which view is correct."

[6] There is an unpublished Ninth Circuit decision, *Bo Liu v. Carona*, 177 Fed.Appx. 623, 2006 WL 1042371 (9th Cir. 2006) that states briefly, without any analysis or reference to *Brewster,* that sheriffs acting in their official capacities act for the state.  The decision cites both *McMillian* and *Brewster.*  No facts are provided in the unpublished decision including the functions performed by the Sheriff found to be immune from section 1983 liability.  *Bo Liu* is not instructive on the direction the Ninth Circuit will take in resolving this issue post-*Venegas*.  *Bo Liu* is not controlling as it is an unpublished opinion issued prior

Defendants motion for summary judgment against Plaintiff's first cause of action for § 1983 claims on the grounds that Kern County Sheriffs act on behalf of the state is **DENIED.**

## II. *MONELL* POLICY OR CUSTOM

Local governments are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983.[7] *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003)(citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)) "[O]ur holding...that local governments can be sued under § 1983

---

to January 1, 2007 and neither the parties nor the courts in the Ninth Circuit may cite to unpublished disposition as precedent if issued prior to January 1, 2007. Ninth Cir. R. 36-3(a)("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."); *see also* Ninth Cir. R. 36-3(b)("Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with Fed. R. App. P. 32.1."); Fed.R.App.P.32.1(a)("Citation Permitted. A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007").

[7] "There is certainly no constitutional impediment to municipal liability. 'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (quoting *Milliken v. Bradley*, 433 U.S. 267, 291 (1977)). There is no "basis for concluding that the Eleventh Amendment is a bar to municipal liability." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

**24**

necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name". *Monell*, 436 U.S. at 691 n.55.  "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional, implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers...[or for] deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id*. 690-91.

Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs.  "[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.  In particular,...a municipality cannot be held liable solely because it employs a tortfeasor.  A municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Id.* at 691.  The statute's "language plainly imposes liability on a government that, under color of some official policy, [that] 'causes' an employee to violate another's constitutional rights." *Id*. at 692.

To prevail on a § 1983 complaint against a local government under *Monell*, a plaintiff must satisfy a three-part test: (1) The

official(s) must have violated the plaintiff's constitutional

rights;[8] (2) The violation must be a part of policy or custom and

may not be an isolated incident; and (3) A nexus must link the

specific policy or custom to the plaintiff's injury. *See Monell*,

436 U.S. at 690-92.  There are three ways to show a policy or

custom of a municipality:

> (1)  By showing a longstanding practice or
>      custom which constitutes the standard
>      operating procedure of the local
>      government entity;
> (2)  By showing that the decision-making
>      official was, as a matter of state law,
>      a final policymaking authority whose
>      edicts or acts may fairly be said to
>      represent official policy in the area of
>      decision or
> (3)  By showing that an official with final
>      policymaking authority either delegated
>      that authority to, or ratified the
>      decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

A municipal policy may be inferred from widespread practices or

evidence of repeated constitutional violations for which the

errant municipal officers were not discharged or reprimanded.

*Id.*  Municipalities can be held liable "if its deliberate policy

caused the constitutional violation alleged." *Blackenhorn*, 485

F.3d at 484.

Plaintiffs in response to Defendants Motion for Summary

Judgment claim *Monell* liability as a result of Defendant Kern

County's policy which expressly permits the use of a canine dog

to be dispatched for "Burglaries/alarms" and Defendant Sheriff

---

[8] "[A] public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights.'" *Brass*, 328 F.3d at 1200 (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979)(citation and internal quotation marks omitted)).

Wimbish's policy.  Plaintiff contends that if the policy authorized the act and the act is found unconstitutional then under *Chew v. Gates* the policy can be the proximate cause of a plaintiff's constitutional violation. Plaintiff also offers as evidence the same evidence relied on in response to Defendants' Motion for Summary Judgment on behalf of Defendant Wimbish.  The evidence includes: (1) Defendant Haislip's declaration that if any deputy has used force in violation of department policy he would have reported it but during the course of the incident he did not see any force that was excessive to the circumstances (Doc. 26-2, Haislip Decl., ¶¶ 2, 9); (2) Defendant Pratt's police report regarding the deployment of his K-9 partner, Nando in seizing and biting Plaintiff as he fled arrest, and the subsequent striking of a baton and biting on the groin by Nando as Plaintiff struggled with Nando, the police dog. (Doc. 32, PSUF, Exhibit A, Kern County Sheriff's Department, Pratt's Report); Kern County Sheriff Department's Use of Force policy; and (4) Kern County Sheriff Department's Canine Policy.

     As to Defendant Wimbish's policies as the basis for *Monell* liability, Plaintiff asserts in his Complaint that Wimbish at the time was "responsible for implementing, maintaining, sanctioning, or condoning a policy, custom or practice under which the illegal or wrongful acts hereinafter complained of occurred.  By reason of this policy, practice or custom [Wimbish is] liable for damages hereinafter complained of." (Doc. 1, Complaint, ¶ 6) These are conclusions of law.  Plaintiff's evidence does not show any per se facially unlawful policy instituted by Defendant Wimbish that caused Plaintiff's constitutional violation.

**27**

While Plaintiff is correct that there do not need to be "widespread and repeated violations" to prove *Monell* liability, Plaintiff must still provide evidence of Kern County's or Sheriff Wimbish's policies that expressly authorized an unconstitutional police dog attack.

Plaintiff cites Kern County Sheriff's Department's Policies and Procedures, F-100, on the Use of Force which states:

> It is the policy of this department that law enforcement personnel, in the performance of their duties, shall use only that amount of force which reasonably appears necessary, given the facts and circumstances known or reasonably believed by the officer at the time of the event, to effectively prevent escape, overcome resistance, or effect arrest "Reasonableness" of the force used must be judged from the perspective of a reasonable officer on the scene at the time of the incident. (Graham v. Connor (1989) 490 U.S. 386).
> California Penal Code Section 835 (a) provides that:

> Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.

> A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance.

(Doc. 26, DSUF, Exhibit A, Kern County Sheriff's Department Policies and Procedures, F-100, "Use of Force policy") *Graham v. Connor,* 490 U.S. 386 (1989), establishes that police officers' actions under a Fourth Amendment excessive force claim are judged in the context of a "reasonableness" factual inquiry. It "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

**28**

confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  Kern County Sheriff Department's Use of Force policy mirrors and tracks *Graham*'s legal standards on the reasonableness of the use of force by police officers.

Plaintiff also refers to Kern County Sheriff Department's Operational Manual on Sheriff's Canine Section Deployments, K-300, or Canine Policy, which specifically references the policy and procedures of the Kern County Sheriff's Department Use of Force:

> POLICY
>
> Due to their unique capabilities and training, Sheriffs canines are ideally Suited for searching and locating suspect(.s): They should not be considered as a "last resort", but should be considered as a primary resource for this type of activity. In addition to their ability to search and locate suspect(s), Sheriff's canines also possess the capability and training to physically seize suspect(s)who are violent and resisting.  In this capacity, the deployment of the Sheriffs canine becomes a use of force, subject to the Use of Force Policy contained in the Departmental Policies and Procedures Manual, Section F-100

(Doc. 26, DSUF, Exhibit E, Kern County Canine Deployment)  The Court notes that Defendant Kern County Sheriff Department's Canine Policy specifically references the Use of Force policy which utilizes the reasonableness legal standard that is provided by *Graham v. Connor.*  Therefore, the Canine Policy is limited by Kern County Sheriff Department's Use of Force policy which clearly prohibits the use of excessive force.  Plaintiff provides no legal authority or expert opinion that a policy that mirrors *Graham v. Connor*'s reasonableness standard is unlawful.  There is no per se legal infirmity in either of these policies.

Plaintiff does not provide any explanation how the policy caused Plaintiff's alleged constitutional violation to support a

*Monell* claim.  And although the County's policy under *Monell* "need only cause [the] constitutional violation; it need not be unconstitutional per se," *Jackson v. Gates,* 975 F.2d 648, 654 (9th Cir. 1992), Plaintiff offers no legal evidence that the Kern County Sheriff Department's policy on excessive force is unconstitutional or the *cause* of the alleged constitutional violation.

Plaintiff also does not provide evidence of a custom of past incidents of Kern County allowing its Sheriff Deputies to use their K-9 partners in violation of a suspect's Fourth Amendment right not to be subject to excessive force, including any custom or policy that permits a K-9 dog to unjustifiably bite and attack suspects continuously until the suspect puts his hands out, surrenders and remains passive.  The mere fact that force was authorized by the policies does not equate to a showing that the policies caused the alleged unconstitutional deprivation. Plaintiff also provides no evidence of instances amounting to a custom of permitting excessive force in the alleged unconstitutional manner Plaintiff asserted occurred in this suit. Other than the alleged unconstitutional incident, no other incidents were offered as evidence of a custom and one incident is not enough to establish a custom under *Monell* that caused Plaintiff's constitutional violation.

As stated in *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994), the policy "'causes' an injury where it is 'the moving force' behind the constitutional violation." 27 F.3d at 1444 (citing *Monell*, 436 U.S. at 694)  And "[w]here a plaintiff claims that the municipality has not directly inflicted injury, but nonetheless

has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable for the actions of its employee." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 405 (1997). Whether the actions of Defendant Pratt are reasonable under the totality of circumstances is not at issue in this Motion for Summary Judgment.  The issue on summary judgment for a *Monell* claim is whether there is any evidence that the Kern County's policy, as a matter of law, caused the alleged unreasonable use of force against Plaintiff.

Defendant Pratt's actions in allowing his K-9 partner to continuously attack and bite Plaintiff, as alleged, without permitting Plaintiff to defend himself even in the face of a bite in his groin section, is a one-time alleged incident that even if arguendo, is assumed to violate Plaintiff's Fourth Amendment rights, does not establish a *Monell* claim.  Plaintiff provides no evidence other than reciting Kern County Sheriff Department's Use of Force policy that contain *Graham*'s reasonableness standard, and his argument that Kern County Sheriff Department's policy is unconstitutional and caused Plaintiff's alleged Fourth Amendment violations.  The Use of Force policy reads, "It is the policy of this department that law enforcement personnel, in the performance of their duties, shall use only that amount of force which reasonably appears necessary . . ." (Doc. 26, Exhibit A, Use of Force Policy, p. 2)  Although the Canine Policy authorized the use of the police dog in a burglary, the policy itself is limited by County's Use of Force policy that prohibits the use of excessive force.  The policy provides that when, "the deployment of the

**31**

Sheriff's canine becomes a use of force, [it is] subject to the Use of Force Policy contained in the Departmental Policies and Procedures Manual, Section F-100." (Doc. 26, Exhibit E, Canine Police, p. 1)  They are still subject to the handler's direction.

Kern County Sheriff Department's Use of Force policy provides a list of factors to be taken into consideration to determine whether to use force and evaluating whether an officer has used reasonable force, including 1) the conduct of the individual being confronted; 2) the officers' and the subject's size; 3) any influence of drugs or alcohol; 4) proximity of weapons; 5) whether the subject is resisting arrest, evading arrest by flight and potential to injure other citizens, officers or suspects. (Doc. 26, Exhibit E, Use of Force, p. F100-3)  Here, the manner in which Defendant Pratt used the dog, meaning the amount of force exercised, is restricted by Kern County Sheriff Department's Use of Force policy which permits only force which is reasonable. (*Id.*)  Plaintiff does not offer expert opinions that a K-9 should never be used in responding to a burglary or continuing alarm.  A burglary which involves a fleeing suspect's entry into a tall field of grass at night without clear knowledge one way or the other if the suspect is armed, offers risk of personal danger to the pursuing Sheriff Deputies entering the field, and an Officer in this situation is offered guidance under Kern County Sheriffs Department's Use of Force policy on the proper amount of force applicable and lawful in this situation.  There is nothing facially unlawful about a policy to use a K-9 in responding to such a burglary or alarm call and nothing in the policy evidences it was a cause of excessive force in the circumstances alleged

**32**

here.

Plaintiff relies heavily on *Chew v. Gates*.  However, in *Chew* the Court took as true for purposes of summary judgment the following: "the city conceded, for purposes of summary judgment, the truth of Chew's contention that departmental policy authorized seizure of *all* concealed suspects-resistant or nonresistant, armed or unarmed, violent or nonviolent-by dogs trained to bite hard and hold. Construing city policy as the appellee concedes we must, it doubtless could be found to be the 'moving force' behind Chew's injury." *Chew,* 27 F.3d at 1444.  However, the Kern County Sheriff Department's policy on the use of dogs is limited by Kern County Sheriff's Department Use of Force policy which states "Deputies of this department, in the performance of their lawful duties, are permitted to use force which reasonably appears necessary to prevent escape, overcome resistance, and effect arrests," (Doc. 26, Use of Force, p. F100-2), and the policy provides specific factors an officer is to consider in its use of force.  "When determining whether to use force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration." (*Id.* at F100-3)  In contrast to *Chew* which was premised on authorizing the use of dogs to attack all concealed suspects resistant or non-resistant, armed or unarmed, violent or nonviolent to be attacked by K-9 dogs, there is no evidence Kern County Sheriff Department's policies do the same.

The 1992 Kolts Report on LAPD's use of police dogs does not bind Kern County.  This exhibit is referenced as evidence next to

**33**

Plaintiff's Statement of Undisputed Fact, No. 6.[1]  Plaintiff does
not state what is included in the report other than referring to
the report in its Statement of Undisputed Facts.  Nor does
Plaintiff discuss this report in his opposition pleading.  A
declaration from Plaintiff would have sufficed providing the basis
for this report and the evidence it deems to provide.  Plaintiff
also cites as evidence for his PSUF No. 6, but also does not
discuss, a deposition taken in another case, by another attorney,
for a case in another court, regarding unrelated parties.  This
deposition is also not discussed in Plaintiff's opposition
pleading.

The Kern County Sheriff's Department policy on Use of Force
which specifically states excessive force is prohibited and only
reasonable force is permitted, and which is based on the *Graham*
decision is not unlawful or unconstitutional per se.  There is no
evidence of a custom by Wimbish or Kern County (or Kern County
Sheriff's Department) that led to the constitutional violation.
Nor is there evidence that the Use of Force policy and Canine
Policy of Kern County Sheriff's Department was a cause of
Plaintiff's constitutional violation.  The Court need not "comb
through the record" looking for other evidence. *Carmen v. San
Francisco Unified School Dist.,* 237 F.3d 1026, 1029 (9th Cir.
2001)

For reasons stated above, Defendants Motion for Summary
Judgment on Plaintiff's § 1983 *Monell* cause of action as to Kern

---

[1] "Letting a police dog attack someone until he becomes
passive or stops fighting the dog, and beating a person because
he tries to stop the dog from biting him is unreasonable police
practice." (PSUF 6)

**34**

County is **GRANTED.**

## 6.   <u>STATE CLAIMS</u>

Defendants move for summary judgment on Plaintiff's state law excessive force claims brought under § 7 and § 13 of the California Constitution and California Civil Code § 52.1.

## A.   CALIFORNIA CONSTITUTION § 7 AND § 13

Plaintiff's second cause of action seeks damages for his claim of excessive force by the officers during the course of his arrest under California Constitution, Art. I, § 7 (due process and equal protection clauses) and § 13 (unreasonable search and seizure).  Defendants argue in their Motion for Summary Judgment that they are entitled judgment under California Constitution, Art I, § 7 and § 13 as there is no private right of action for damages available.

Plaintiff cannot bring a damages claim directly under Article I, Sections 7 or 13 of the California Constitution, in part because alternative statutory and/or common law causes of action are available to redress his grievances.  *Cf. Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 303 (2002) (no private right of action of the due process and equal protection clauses under California Constitution, Art. I, § 7(a)); *see also Wigfall v. City and County of San Francisco,* No. C 06-4968 VRW, 2007 U.S. Dist. Lexis 82047, 2007 WL 174434 (N.D.Cal. Jan. 22, 2007) (providing a *Katzberg* analysis on the availability of damages under California Constitution, Art. I, § 13).  "Neither the plain language of the article I, section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation."

**35**

*Manning v. City of Rohnert Park*, No. C 06-03435 SBA, 2007 U.S. Dist. LEXIS 31301, at *2, 2007 WL 1140434, at *1 (N.D.Cal. April 17, 2007)  And here, a claim under California Civil Code § 52.1(b) for excessive force which Plaintiff cites in his third cause of action provides for a civil action, for damages for "[a]ny individual whose exercise or enjoyment of rights secured...by the Constitution or laws of [California]...has been interfered with..." Cal. Civ. Code § 52.1(b).

Defendants Motion for Summary Judgment on Plaintiff's second cause of action under § 7 and § 13 of the California Constitution is **GRANTED.**

**B.   CALIFORNIA CIVIL CODE §52.1 (EXCESSIVE FORCE)**

Plaintiff's third claim is brought under California Civil Code § 52.1.  Plaintiff alleges in his third claim:

> 14. The use of unreasonable and/or excessive force against plaintiff during the course of his arrest violated plaintiff's state and federal rights through intimidation, threats and/or coercion, thereby entitling plaintiff to sue for damages under Cal. Civ. Code § 52.1(b).
> 15.  Under Cal. Gov't Code § 815.2, defendants Kern County and KSD are liable for the misconduct of the Kern County Sheriff's Deputies, committed within the course and scope of their employment.

(Doc. 1, Complaint ¶¶ 14-15)

Defendants argue that statutory immunity precludes imposition of liability under the Bane Act which is codified at California Civil Code section 52.1.

California Civil Code § 51.2(b) permits an individual whose "exercise or enjoyment of rights secured by the...Constitution or laws of this state" has been interfered with by "threats, intimidation, or coercion" (or attempted threats, intimidation, or

coercion) to bring a private right of action for damages.

Defendants cite California Civil Code section 3342 as precluding the imposition of liability for the use of a police dog.  However, as Plaintiff correctly notes § 3342(b) immunity, by its statutory terms, only applies to a claim brought under subdivision (a) of § 3342:

> (a) The owner of any dog is liable for the damages suffered by any person who is bitten by the dog...
>
> (b) Nothing in this section shall authorize the bringing of an action pursuant to subdivision (a) against any governmental agency using a dog in military or police work if the bite or bites occurred while the dog was defending itself from an annoying, harassing, or provoking act, or assisting an employee of the agency in any of the following:
>> (1) In the apprehension or holding of a suspect where the employee has a reasonable suspicion of the suspect's involvement in criminal activity.

Cal. Civ. Code § 3342 (a) and (b).

Defendants motion for summary judgment on Plaintiff's third cause of action for excessive force under California Civil Code § 52.1 is **DENIED**.

### 7.  <u>SUMMARY ADJUDICATION</u>

Plaintiff requests that the Court adjudicate that the dog attack and beating violated the Fourth Amendment.  Plaintiff alleges that it is undisputed that the dog attacked Plaintiff when he was not threatening injury to anyone, that Defendant Pratt refused to call of the dog until Plaintiff stopped trying to protect himself.  Defendants dispute this and claim the evidence shows that a weapon, a screw driver was found on Plaintiff and Plaintiff began beating dog when it approached before Defendant Pratt used any force and before Nando, the K-9 dog bit Plaintiff

in the groin.  For the reasons stated above, including Defendants'
evidence stated in response to Plaintiff's adjudication request,
there are disputed issues of material fact concerning whether the
dog attack and beating violated the Fourth Amendment and the Court
DENIES Plaintiff request for adjudication on this fact.

## CONCLUSION

For the reasons set forth above,

(1) Defendants Wimbish, Pratt and Haislip, sued in their
official capacities under Plaintiff's first cause of action, §
1983 excessive force claim are **DISMISSED FROM THE SUIT WITH
PREJUDICE.**

**(2)** Defendants motion for summary judgment on behalf of
Defendant Kern County Sheriff's Department under the first cause
of action, § 1983 excessive force claim is **GRANTED.**

**(3**) Defendants motion for summary judgment on behalf of
Defendant Haislip regarding the first cause of action, § 1983
excessive force claim is **DENIED** as to Defendant Haislip's
opportunity to intercede to prohibit Defendant Pratt from striking
Plaintiff but **GRANTED** as to Defendant Haislip's opportunity to
intercede to prohibit Defendant Pratt's K-9 from attacking
Plaintiff, and **DENIED** on qualified immunity grounds.

**(4)** Defendants motion for summary judgment on behalf of
Defendant Wimbish under the first cause of action, § 1983 personal
liability for excessive force claim as a supervisor is **GRANTED.**

**(5)** Defendants motion for summary judgment on behalf of Kern
County under Plaintiff's first cause of action, § 1983 *Monell*
claim is **GRANTED.**

**(6)**   Defendants motion for summary judgment on Plaintiff's second cause of action, excessive force claim against Defendants Kern County and Kern County Sheriff's Department under § 7 and § 13 of the California Constitution is **GRANTED.**

**(7)**   Defendants motion for summary judgment on Plaintiff's third cause of action, excessive force claim against Defendants Kern County and Kern County Sheriff's Department under California Civil Code § 52.1 on statutory immunity grounds is **DENIED.**

**(8)** Plaintiff's request for adjudication as to the K-9 dog attack and use of force by Defendant Pratt being in violation of the Fourth Amendment is **DENIED.**

IT IS SO ORDERED.

**Dated:    February 25, 2008            /s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE